UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                              :

SANOFI-AVENTIS,
SANOFI-SYNTHELABO INC., and
BRISTOL-MYERS SQUIBB SANOFI
PHARMACEUTICALS HOLDING
PARTNERSHIP,

                                          02 Civ. 2255 (SHS)

                            Plaintiff,

                                          OPINION & ORDER

            -against-

APOTEX INC. and APOTEX CORP.,

                            Defendants.

------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

       Plaintiffs Sanofi-Aventis, Sanofi-Synthelabo Inc., and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership (collectively, "Sanofi") seek summary judgment on the issue of damages in this patent dispute concerning the drug Plavix. Because defendants Apotex Inc. and Apotex Corp. (collectively, "Apotex") are liable to Sanofi for fifty percent of a net sales figure that the parties agree is $884,418,724, Sanofi's motion for $442,209,362 in damages is granted. Sanofi is also entitled to interest and costs pursuant to 35 U.S.C. section 284.

**I.    BACKGROUND**

       On March 21, 2002, Sanofi filed this patent infringement suit against Apotex. This Court's Opinion dated August 31, 2006 recounted the history of this protracted litigation and granted Sanofi's motion for a preliminary injunction. *See Sanofi-Synthelabo v. Apotex Inc.*, 488 F. Supp. 2d 317 (S.D.N.Y. 2006), *aff'd*, 470 F.3d 1368 (Fed. Cir. 2006). The Court assumes familiarity with that Opinion. In 2007, the Court held a five-week bench trial on the merits, after which it found that Sanofi's patent on clopidogrel bisulfate (the chemical name for Plavix)—

1

U.S. Patent No. 4,847,265 ("'265 patent")—was valid and enforceable, and that Apotex had violated the patent by manufacturing and distributing a generic form of the drug. The Federal Circuit affirmed that determination in December 2008, and the United States Supreme Court denied Apotex's petition for certiorari in November 2009. *See Sanofi-Synthelabo v. Apotex Inc.*, 492 F. Supp. 2d 353 (S.D.N.Y. 2007), *aff'd*, 550 F.3d 1075 (Fed. Cir. 2008), *cert. denied*, 130 S.Ct. 493 (2009).[1]

The only aspect of this action that remains unresolved is the amount of damages to be awarded plaintiffs. The parties specifically limited the amount of damages awardable in this action in a settlement agreement entered into prior to trial (Settlement Agreement between Sanofi and Apotex dated May 26, 2006 ("Settlement Agreement"), attached to Decl. of David Armillei dated Dec. 18, 2009, Ex. 2.) Sanofi has moved for summary judgment in the amount of $442,209,362, plus prejudgment interest—at the average annual prime rate, compounding daily, from August 2006 to the present—as well as the costs of the action and statutory post-judgment interest. Defendants contend that only Apotex Corp.—and not Apotex Inc.—is liable for damages and that Sanofi is not entitled to any prejudgment interest. Defendants also argue that if the Court does award prejudgment interest, material issues of fact preclude summary judgment as to how it should be calculated.

## II. DISCUSSION

### A. Legal Standard

---

[1] In addition, the United States Patent and Trademark Office has certified the patentability of all claims of Sanofi's patent, (*see* Ex Parte Reexamination Certificate dated Jun. 29, 2010, attached to Robert L. Baechtold letter dated July 1, 2010). It also denied the second reexamination requested by Apotex, (*see* Order Denying Request for Reexamination, attached to Baechtold letter), and on October 1, 2010, it denied Apotex's petition to review its denial of the second reexamination request, (*see* Decision on Petition attached to Richard S. Stark letter dated Oct. 14, 2010).

Summary judgment is appropriate only if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004). Nonetheless, the party opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" in support of its factual assertions. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

B.  Apotex's Liability

The parties entered into the Settlement Agreement to govern the damages from Apotex's patent infringement. This agreement specifically defines "Apotex" as "Apotex Inc. and Apotex Corp., collectively and individually, and including any entity now or hereafter owned or controlled by any of them." (Settlement Agreement ¶ 1.) Bernard Sherman, CEO of Apotex Inc., signed the agreement explicitly "[f]or Apotex Inc[.] and Apotex Corp." (*Id.* at 5). Accordingly, Apotex Inc. and Apotex Corp. are jointly and severally liable for damages pursuant to the Settlement Agreement.[2]

C.  Damages Amount

Sanofi seeks summary judgment awarding 50% of the agreed upon net sales figure of $884,418,724. The Settlement Agreement provides that:

> If the litigation results in a judgment that the '265 patent is not invalid or unenforceable, Sanofi agrees that its actual damages for any past infringement by Apotex, up to the date on which Apotex is enjoined, will be 50% of Apotex's net

---

[2] The Court also notes that Apotex waited until now—years after trial and appeal—to draw a distinction for these purposes between Apotex Inc. and Apotex Corp., and to assert for the first time a defense to Apotex Inc.'s liability for damages.

>  sales of clopidogrel products if Sanofi has not launched an authorized generic and 40% of Apotex's net sales if Sanofi has launched an authorized generic. Sanofi further agrees that it will not seek increased damages under 35 U.S.C. § 284.

(Settlement Agreement at ¶ 14(ii).) Pursuant to this agreement, Apotex is liable to Sanofi for fifty percent of its net sales resulting from a three-week period in August 2006 during which it flooded the market with its generic product before being preliminarily enjoined from doing so by this Court, which found the '265 patent to be valid and enforceable.[3] (*See id.*) *See also Sanofi-Synthelabo*, 488 F. Supp. 2d at 321.

The parties have conducted discovery and fully briefed Sanofi's motion for summary judgment on damages. They have agreed that Apotex's net sales for the relevant period were $884,418,724. (Pl.'s Local Civil Rule 56.1 Statement of Undisputed Facts ¶ 1; Def.'s Local Civil Rule 56.1 Statement of Undisputed Facts ¶ 1.) Thus, the underlying damages are 50 percent of that figure—or $442,209,362. (*See* Settlement Agreement at ¶ 14(ii).)

### D.   Prejudgment Interest

#### 1.   *Sanofi is Entitled to Prejudgment Interest*

The parties dispute whether prejudgment interest applies to this damage award. While the Settlement Agreement sets the measure of damages, it is silent as to prejudgment interest on those damages. (*See* Settlement Agreement ¶ 14(ii).) The parties' dispute turns on the relationship between 35 U.S.C. sections 271(e) and 284, which govern liability and damages, respectively, in patent infringement actions.

---

[3] Apotex contends that it is liable for only forty percent of its net sales because Sanofi "launched an authorized generic." However, the fact that Sanofi lowered its price for branded Plavix in order to compete with generics does not constitute the launch of an authorized generic. As this Court previously ruled, "Sanofi is correct that the acts alleged by Apotex do not fall within the plain and unambiguous meaning of the contract that contemplates the 'launch of an authorized generic drug.'" *Sanofi-Synthelabo v. Apotex Inc.*, 2009 WL 5247497, at *2 (S.D.N.Y. Dec. 30, 2009). Thus, Sanofi is entitled to fifty percent of net sales pursuant to paragraph 14(ii) the Settlement Agreement.

Apotex contends that because Sanofi alleged and proved infringement only under section 271(e)(2), Sanofi is not entitled to recovery under section 284.  Section 271(e)(4) states that the remedies a court may order upon a finding of infringement are 1) directing that the effective date of the approval of a drug be not earlier than the expiration date of the infringed patent, 2) an injunction, and 3) "damages or other monetary relief."  The statute goes on to state that those three remedies "are the only remedies which may be granted by a court for an act of infringement described in [section 271(e)(2)], except that a court may award attorney fees under section 285."  35 U.S.C. § 271(e)(4).  Because section 271(e) does not list prejudgment interest as one of its three exclusive remedies, Apotex argues that prejudgment interest is not authorized by the Patent Act.

It is undisputed that one of the available remedies for patent infringement is "damages or other monetary relief" pursuant to 35 U.S.C. section 271(e)(4)(c).  In addition to filing an Abbreviated New Drug Application in violation of section 271(e)(2), Apotex also imported the drug and sold it commercially within the United States—conduct that makes "damages or other monetary relief" available pursuant to section 271(e)(4)(c).  Section 284 defines what constitutes "damages" in patent infringement cases.  That section provides, in pertinent part, that: "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, *together with interest and costs* as fixed by the court."  35 U.S.C. § 284 (emphasis added).  *See Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983) ("[P]rejudgment interest should be awarded under § 284 absent some justification for withholding such an award.")

5

The court finds no justification to withhold prejudgment interest here. Sanofi has a right to interest and costs pursuant to section 284[4] on the basis of Apotex's violation of section 271(e).[5] While the Settlement Agreement explicitly limits *damages*, it does not in any way restrict an award of *interest* on those damages. (*See* Settlement Agreement ¶ 14(ii).) Damages and interest are distinct categories of recovery. *See* 35 U.S.C. § 284. Moreover, the fact that the parties agreed on an interest rate for one obligation (*see* Settlement Agreement ¶ 10), but not for damages, does not vitiate Sanofi's statutory right pursuant to section 284 to prejudgment interest. In the absence of any agreement to the contrary, the general rule awarding interest on damages in patent infringement actions remains unaltered. *See* 35 U.S.C. § 284; *Devex*, 461 U.S. at 657.

Years of litigation have only confirmed Apotex's liability to Sanofi. Apotex has had the use of money Sanofi was entitled to since the patent infringement occurred, and Sanofi deserves complete compensation. *Id.* at 655 ("[A]n award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement."). Therefore, this Court grants Sanofi prejudgment interest on the $442,209,362 in damages.

### 2. *Calculation of Prejudgment Interest*

Sanofi contends that prejudgment interest should be set at the average annual prime rate for each year (or partial year) from August 2006 to present, compounding daily. Apotex, on the other hand, contends that if the Court awards prejudgment interest, further discovery is needed because issues of fact—such as Sanofi's sales reports and whether Sanofi borrowed money at the

---

[4] Sanofi is also entitled to costs pursuant to Fed. R. Civ. P. 54(d)(1), since it is the "prevailing party." Fed. R. Civ. P. 54(d)(1) ("[C]osts . . . should be allowed to the prevailing party.").
[5] Sanofi argues that Apotex's conduct constituted patent infringement pursuant to section 271(b) as well, which constitutes a separate basis for prejudgment interest pursuant to section 284, but it is unnecessary for the Court to address that issue.

6

prime rate during the infringement period—preclude summary judgment on Sanofi's motion. Apotex suggests that the U.S. Treasury-bill rate may be more appropriate.

A trial court has discretion in setting the amount of prejudgment interest. 35 U.S.C. § 284 (granting "interest and costs *as fixed by the court*") (emphasis added); *see also Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) ("A trial court is afforded wide latitude in the selection of interest rates . . . and may award interest at or above the prime rate."). Awarding interest at the prime rate, compounded quarterly, "better approximates a corporate borrower's costs of funds" than the Treasury-bill rate, which represents the government's borrowing rate. *U.S. Philips Corp. v. Iwasaki Elec. Co., Ltd.*, 607 F. Supp. 2d 470, 483 (S.D.N.Y. 2009); *see also NTP, Inc. v. Research In Motion, Ltd.*, 270 F. Supp. 2d 751, 763 (E.D. Va. 2003) ("The prime rate, compounded quarterly, is a conservative, middle-of-the-road approach that takes into account normal market fluctuations."); John M. Skenyon, Christopher S. Marchese, John Land, *Patent Damages Law & Prac.* § 4:6 (Aug. 2010) ("The prime rate is the most common candidate for an appropriate interest rate.")  Although Sanofi has not provided evidence of the rate at which it borrows money, the Federal Circuit has held that "it is not necessary that a patentee demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate." *Uniroyal, Inc.*, 939 F.2d at 1545. This Court therefore sets prejudgment interest at the average annual prime rate, compounded quarterly.[6]

The parties dispute the point from which prejudgment should start to run. Apotex contends that the interest calculation should depend on when Sanofi would have sold Plavix if Apotex had not entered the market. However, Sanofi is correct that damages in this action are based on *Apotex*'s net sales during a period in August 2006. (*See* Settlement Agreement ¶

---

[6] For the annual prime rate, see U.S. FED. RESERVE BD. H.15 SELECTED INTEREST RATES, BANK PRIME LOAN-ANNUAL, *available at* http://www.federalreserve.gov/releases/h15/data/Annual/H15_PRIME_NA.txt.

14(ii).)  Because Sanofi's claim for damages—and interest on those damages—accrued when Apotex made the infringing sales, Apotex must pay prejudgment interest from the date of those sales.  Rather than engender another round of disputation in regard to when each sale was made, the Court exercises its discretion to pick the mid-point of the infringing period as the date for the start of prejudgment interest.  *See* 35 U.S.C. § 284 (granting interest as "fixed by the court").  Accordingly, this Court finds as a matter of law that prejudgment interest shall run from August 19, 2006 until the date judgment is entered.  *See Devex*, 461 U.S. at 655-56 & n.10.

      E.      Post-judgment Interest

Post-judgment interest is governed by 28 U.S.C. section 1961.  Pursuant to that statute, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a).  "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield" and "compounded annually."  *Id.* at § 1961(b).  The United States Supreme Court has noted that "the purpose of post-judgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of damage and the payment by the defendant."  *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990) (citation omitted).

Here, Sanofi's right to damages was established in this Court's June 17, 2007 opinion. *Sanofi-Synthelabo*, 492 F. Supp. 2d 353 (S.D.N.Y.2007).  However, those damages were "to be set in an amount to be determined through future proceedings."  *Id.* at 397.  Because the amount of damages was not set until this Opinion and Order, all interest to date is prejudgment, rather than post-judgment.  The relevant "money judgment" for purposes of section 1961 is the judgment that the Clerk of Court will enter pursuant to this Opinion and Order, *see* Fed. R. Civ.

P. 54(a), and post-judgment interest will run from that date until the judgment is paid, *see* 28 U.S.C. § 1961.

### III. CONCLUSION

For the reasons set forth above, Sanofi's motion for summary judgment on its claim for $442,209,362 in damages is granted. Sanofi is also entitled to prejudgment interest on that award at the average annual prime rate, compounded quarterly, from August 19, 2006 until the present—as well as costs and post-judgment interest as set by statute. The Clerk of Court is directed to enter judgment accordingly.

Dated: New York, New York
      October 19, 2010

SO ORDERED:

Sidney H. Stein, U.S.D.J.